Filed 5/12/14  Cafagna v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEVIN CAFAGNA et al., | D065339 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. 37-2013-00047002-CU-MC-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SQUARE ONE DEVELOPMENT CORPORATION, | |
| Real Party in Interest. | |

PETITION for writ of mandate challenging order of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Petition denied.

Higgs, Fletcher & Mack, John Morris, Steven J. Cologne, Victoria E. Fuller and Rahil K. Swigart for Petitioners.

No appearance for Respondent.

Galuppo & Blake, Louis A. Galuppo and Steven W. Blake for Real Party in Interest.

Kevin Cafagna, as an individual, and Sharon Cafagna, as trustee of the Cafagna Family Trust (together the Cafagnas), filed a petition for writ of mandate challenging an order denying their motion to disqualify counsel for Square One Development, Inc. (Development) in their action against Development for dissolution of Development. The Cafagnas contend the trial court erred by denying their disqualification motion because: (1) the legal problem involved in the instant action is substantially related to the legal problems involved in matters in which Development's counsel formerly represented the Cafagnas (i.e., successive representation theory); and (2) Development's counsel concurrently represents Development and the Cafagnas in adverse matters (i.e., concurrent representation theory). Because we conclude the trial court did not abuse its discretion by finding neither the successive representation nor the concurrent representation theory required disqualification of Development's counsel, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Beginning in the 1980's, Michael Cafagna and Mark Mandell worked together and formed over 20 different limited partnerships, corporations, and limited liability companies to purchase, sell, develop, and manage real property, which affiliated entities are sometimes cumulatively referred to by the parties as "Square One Enterprise"

2

(Enterprise).  In 1983, Michael[1] incorporated Development.  In 2006, Michael gave gifts of 25 percent of Development's stock to Mark, Mark's son Jonathan Mandell, and Michael's son Kevin, retaining the remaining 25 percent of its stock.  Thereafter, the Cafagna family owned 50 percent of Development's stock and the Mandell family owned 50 percent of its stock.

Following Michael's death in 2009, the Cafagnas and Mandells apparently had disagreements over the proper management of Development, which was being managed by Mark.[2]  The Cafagnas and Mandells apparently also have disputes regarding Square One, Inc. (Square One) and other Enterprise entities.  Development has four directors: Sharon, Kevin, Mark and Jonathan.

In May 2013, the Cafagnas filed a complaint against Development for dissolution of Development pursuant to Corporations Code section 1800.  The complaint alleged the following grounds for dissolution of Development:

> "a.  [Development] has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that its business can no longer be conducted to advantage and the holders of the voting shares of the corporation are so divided into factions that they cannot elect a board consisting of an uneven number;
>
> "b.  [Development] has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that there is a danger that its property and business will be impaired or

[1]    We refer to members of the Cafagna and Mandell families by their first names to distinguish them from other members of the same family.

[2]    After his death, Michael's wife Sharon, as trustee of the Cafagna Family Trust, apparently became the owner of his 25 percent of Development's stock.

3

lost and the holders of the voting shares of [Development] are so divided into factions that they cannot elect a board consisting of an uneven number;

"c. There is internal dissension and two or more factions of shareholders in [Development] are so deadlocked that its business can no longer be conducted with advantage to its shareholders; and

"d. The liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholders."

In June, Development, by its counsel, the Galuppo & Blake law firm (Galuppo), filed its answer to the Cafagnas' complaint.

On September 4, 2013, the Cafagnas filed a motion to disqualify Kyle Yaege and Galuppo (Counsel) from representing Development in the instant action. The Cafagnas argued Counsel should be disqualified because they concurrently represent both the Cafagnas and Development in adverse matters and, in addition, Kyle and/or his wife, Eden, formerly represented the Cafagnas and/or Square One (in which the Cafagnas own all the stock) in matters involving legal problems or issues substantially related to the legal problems or issues involved in the instant action. In support of their motion, the Cafagnas submitted their own declarations and lodged certain documents. Development opposed the motion to disqualify Counsel, arguing the Yaeges' prior representation of the Cafagnas was not substantially related to Counsel's current representation of Development in the instant action and, in addition, there was no concurrent representation by Counsel of the Cafagnas and Development. In support of its opposition, Development submitted the declarations of Kyle Yaege, Eden Yaege, Mark, and Louis Galuppo. The Cafagnas filed a reply to Development's opposition.

4

Following arguments of counsel, the trial court issued an order denying the motion to disqualify (Order), stating in part:

> "As an initial matter, the Court concludes that [the Cafagnas] have failed to demonstrate that there is a concurrent representation by counsel for [Development] and [the Cafagnas].

> "Additionally, the Court believes that [the Cafagnas] have similarly failed to demonstrate that defense counsel obtained confidential information about the [Cafagnas] that can be used in this case to the [Cafagnas'] detriment and that the prior representation is substantially related to the subject matter of this case."

The Cafagnas filed the instant petition for writ of mandate challenging the Order. Development filed an informal response. We issued an order to show cause why the relief requested should not be granted. Thereafter, Development filed a return and the Cafagnas filed a reply.

DISCUSSION

I

*Legal Standards for Disqualification of Counsel*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.] Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to

5

ethical considerations that affect the fundamental principles of our judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.)  "Other factors to consider in deciding a motion to disqualify counsel include the attorney's interest in representing the client, the financial burden on the client to replace disqualified counsel, and the possibility that the disqualification motion is being used as a litigation tactic."  (*Fremont Indemnity Co. v. Fremont General Corp.* (2006) 143 Cal.App.4th 50, 62.)

In general, there are two types of situations in which conflicts requiring the disqualification of counsel may arise--concurrent representation and successive representation.  (*Cal West Nurseries v. Superior Court* (2005) 129 Cal.App.4th 1170, 1174.)  "Whether or not disqualification is required in successive representation cases depends upon two variables: '(1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation.' "  (*Santa Teresa Citizen Action Group v. City of San Jose* (2003) 114 Cal.App.4th 689, 711.)  "This rule is based upon the potential violation of the lawyer's duty of confidentiality."  (*Cal West*, at p. 1174.)  "If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have value in the current relationship.  Thus, actual possession of confidential information need not be proven . . . ."  (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1056.)

6

In a concurrent representation case, the "substantial relationship" test does not apply. "Absent informed written consent, a lawyer may not concurrently represent clients who have actual or potential conflicts; nor may a lawyer represent one client against another in an unrelated matter. [Citations.] It is immaterial whether the lawyer possesses confidential information that could be misused to the prejudice of either client." (*Cal West v. Superior Court*, *supra*, 129 Cal.App.4th at p. 1175.) "The primary value at stake in cases of simultaneous or dual representation is the attorney's duty--and the client's legitimate expectation--of *loyalty*, rather than confidentiality." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284.) Therefore, the rule requiring disqualification of an attorney who concurrently represents adverse interests is a per se or automatic rule. (*Ibid*.)

## II

### *Standard of Review*

In *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, we described the standard of review that applies to a trial court's decision to grant or deny a motion to disqualify counsel. "A trial court's ruling on a disqualification motion is reviewed under the deferential abuse of discretion standard. [Citations.] 'In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies.' [Citations.] 'The order is subject to reversal only when there is no reasonable basis for the trial court's decision.' [Citation.] [¶] 'In deciding whether the trial court abused its discretion, "[w]e are . . . bound . . . by the substantial evidence rule." ' [Citation.] The trial court's order is ' "presumed correct; all intendments and

7

presumptions are indulged to support [it]; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive." ' [Citations.] Hence, we presume the trial court found in [the prevailing party's] favor on 'all disputed factual issues.' [Citation.] Further, 'where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence.' [Citation.] 'In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' [Citation.] 'If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.' " (*Id*. at pp. 46-47.)

III

*Successive Representation*

The Cafagnas contend the trial court erred by concluding the successive representation rule did not apply in the circumstances of this case to require disqualification of Counsel. They assert the legal problem involved in the instant action is substantially related to the legal problems or issues involved in matters in which Counsel formerly represented them.

8

## A

In moving to disqualify Counsel from representing Development in this action, the Cafagnas argued that Eden Yaege and Kyle Yaege had formerly represented them in legal problems or matters that are substantially related to the legal problem involved in the instant action. In support of their motion, the Cafagnas submitted their declarations and lodged certain documents. Kevin's declaration stated in part:

> "6. [Development] also had Eden Yaege working for it. . . .

> "7. After graduating from law school in 2007, Eden continued her previous role with [Enterprise] [and] . . . eventually became more experienced and became the general counsel for [Enterprise]. She would advise on lease issues, oversee the litigation matters that were pending for each of the entities, ensure that the collection efforts were underway for any and all matters where third parties owed money to any of the entities and work on the corporate and partnership compliance issues for all the entities. . . .

> "8. . . . Eden provided transactional legal advice to Square One, Inc., a corporation owned solely by the Cafagna Family Trust. Eden prepared trust documents for us . . . .

> "9. Kyle Yaege also represented the Cafagna family in potential litigation matters. . . .

> "10. Kyle also represented individual entities in [Enterprise] in numerous litigation matters.

> "11. Eden and Kyle also had complete access to and Eden routinely reviewed confidential information for the Cafagna-owned entities, our family trusts, and Sharon and Michael's individual tax returns. Eden also maintains copies of all Cafagna family trust documents and routinely updated a matrix that contained confidential information about each of the family trusts.

> "12. . . . Sharon and I provided [Eden and Kyle] with confidential information to assist them in our representation. . . ."

9

Sharon's declaration stated in part:

"7. . . . Eden provided transactional legal advice to Square One, Inc. . . . She would update the corporate documents as required by statute and ensure that [it was] complying with the law as far as formalities were concerned.

"8. Even though I hired counsel to assist in the administration of the trust and Michael's estate, Eden prepared trust documents for our family trusts. . . .

"9. Kyle Yaege also represented the Cafagna family in potential litigation matters where we were individually named as possible defendants.

"10. Eden and Kyle also had complete access to and routinely reviewed confidential information for Kevin, the Cafagna-owned entities and [me]. For example, until 2011, Eden maintained copies of the tax returns for all the [Enterprise] entities, including the personal tax returns for Michael and me, and tax returns for the Cafagna family trusts. Eden also maintains copies of all Cafagna family trust documents and routinely updated a matrix that contained confidential information about each of the family trusts."

Sharon's declaration also described several e-mails and documents that showed Eden and Kyle's past representation of Enterprise, Sharon, and the Cafagna family.

In opposing the motion to disqualify, Development argued the Yaeges' prior representation of the Cafagnas is not substantially related to Counsel's current representation of Development in the instant action. In support of its opposition, Development submitted the declarations of Kyle Yaege, Eden Yaege, Mark, and Louis Galuppo. Eden's declaration stated she assisted Mark with drafting leases and coordinating commercial loans and performed other tasks he asked her to do. Regarding those matters that involved the Cafagnas or their wholly owned entities, all of the information disclosed to her came from Mark outside the Cafagnas' presence or was

10

provided by them with Mark's active participation. She had about 10 meetings in person with Sharon over 10 years and slightly more meetings with Kevin, and most of those meetings were informal. Kyle's declaration described his representation of the Cafagnas regarding his negotiation of a tolling agreement in a dispute with a lender regarding a limited partnership that had defaulted on its loan.

The trial court denied the Cafagnas' motion to disqualify Counsel, concluding they had not carried their burden to show either concurrent representation or that the legal problems or issues in Counsel's former representation of the Cafagnas are substantially related to the legal problem in the instant action.

B

We conclude the trial court did not abuse its discretion by finding the Cafagnas had not carried their burden to show the legal problems or issues in Counsel's former representation of them are substantially related to the legal problem or issue in the instant action. Under the Cafagnas' successive representation theory, they had the burden to show a substantial relationship exists between the legal problems involved in Counsel's former representation of them and the legal problem involved in the instant action. (*Santa Teresa Citizen Action Group v. City of San Jose*, *supra*, 114 Cal.App.4th at p. 711; *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1056; *Flatt v. Superior Court, supra,* 9 Cal.4th at p. 283.) "To determine whether there is *a substantial relationship between successive representations*, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services *on a legal issue that is closely related to*

11

*the legal issue in the present representation*." (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847, italics added.) "The test for a 'substantial relationship' between cases entails an inquiry into ' "the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." ' [Citation.] It must be shown that the information from the prior representation is 'material' to the current employment. [Citation.] ' "As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." ' " (*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 234.)

Based on our review of the evidence submitted by the parties below, we conclude there is substantial evidence to support the trial court's finding that neither Eden Yaege nor Kyle Yaege formerly represented the Cafagnas in any matter involving a legal issue *closely related* to the legal issue in the instant action. (*City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th at p. 847.) Applying the presumption of correctness and abuse of discretion standard of review, we defer to the trial court's findings of fact, including its determinations of the weight and credibility of evidence. (*Clark v. Superior Court*, *supra*, 196 Cal.App.4th at pp. 46-47.) In so doing, we infer the trial court found the declarations of the Cafagnas to be insufficiently specific regarding the exact nature of Counsel's former representation of the Cafagnas and inadequate to show the existence of any legal issue that is closely related to the legal issue in the instant action. As Development asserted below and the trial court impliedly found, the legal

12

issue in the instant action is whether or not the statutory prerequisites have been satisfied for dissolution of Development as a corporation.  The Cafagnas' complaint in the instant dissolution action seeks an order requiring the directors of Development to wind up its affairs, subject to supervision by the trial court, in accordance with the Corporations Code.  It also asks the trial court to entertain such proceedings as may be necessary or proper for the involuntary winding up or dissolution of Development.

The instant action does not involve any legal issues other than whether the statutory prerequisites have been satisfied for dissolution of Development pursuant to Corporations Code section 1800 and, if so, what actions and proceedings are necessary or appropriate to wind up and dissolve Development.[3]  However, none of the matters in

---

3  Corporations Code section 1800, subdivision (b), sets forth the following grounds for involuntary dissolution of a corporation: "(1)  The corporation has abandoned its business for more than one year. [¶] (2)  The corporation has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that its business can no longer be conducted to advantage or so that there is danger that its property and business will be impaired or lost, and the holders of the voting shares of the corporation are so divided into factions that they cannot elect a board consisting of an uneven number. [¶] (3)  There in internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business can no longer be conducted with advantage to its shareholders or the shareholders have failed at two consecutive annual meetings at which all voting power was exercised, to elect successors to directors whose terms have expired or would have expired upon election of their successors. [¶] (4) Those in control of the corporation have been guilty of or have knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of authority or persistent unfairness toward any shareholder or its property is being misapplied or wasted by its directors or officers. [¶] (5) In the case of any corporation with 35 or fewer shareholders (determined as provided in [Corporations Code] Section 605), liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders. [¶] (6) The period for which the corporation was formed has terminated without extension of such period."  Based on the Cafagnas'

13

which Eden and Kyle Yaege formerly represented the Cafagnas involved those legal issues or any other legal issue closely related to those issues. The fact Eden formerly represented the Cafagnas in transactional matters and preparation of Cafagna family trust documents does not have a "close relationship" to the legal issues in the instant action to involuntarily dissolve Development. Similarly, Kyle's former representation of the Cafagnas or Enterprise entities in potential litigation matters does not show those matters involved a legal issue closely related to the legal issues in the instant action to involuntarily dissolve Development. Regardless of the nature and extent of the personal contacts between the Cafagnas and the Yaeges, there is no evidence showing the Yaeges (or Galuppo) formerly represented the Cafagnas in any matters involving a legal issue closely related to the legal issues in the instant action. The trial court correctly found the Cafagnas had not carried their burden to show the successive representation rule applied to require Counsel's disqualification. Alternatively stated, there is substantial evidence to support the court's finding that there is no substantial relationship between the legal problems or issues in the instant action and the legal problems or issues in matters in which Counsel formerly represented the Cafagnas.

IV

*Concurrent Representation*

The Cafagnas contend the trial court erred by concluding they had not carried their burden to show Counsel concurrently represents them and Development in adverse

complaint, they appear to basing their dissolution action on the grounds set forth in Corporations Code section 1800, subdivision (b)(2), (3), and (5).

14

matters. They assert that Counsel currently represents them in the course of representing three limited partnerships of Enterprise, which partnerships have Square One (wholly owned by the Cafagna family) as their general partner. Although the Cafagnas apparently assert Counsel's purported representation of Square One necessarily means Counsel also represents them as Square One's sole shareholders, we need not address that question because we conclude they have not persuaded us there is insufficient evidence to support the trial court's implied finding that Counsel does not currently represent Square One.[4]

"[R]epresentation of a partnership does not, by itself, create an attorney-client relationship with the individual partners." (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1731; see also Rules Prof. Conduct, rule 3-600(A) ["In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement."]; cf. *Kapelus v. State Bar* (1987) 44 Cal.3d 179, 191-192.) Therefore, Counsel's representation of the three limited partnerships does not, by itself, create an attorney-client relationship with Square One (or

---

4    We further note the Cafagnas mistakenly argue in their reply brief that Eden Yaege provided legal advice "over many years to the Cafagna Family specifically related to [Square One] and [Square One's] rights as General Partner of [Development]." Because Development is a corporation, it does *not* have a "general partner," but rather is managed by a board of directors elected by its shareholders and the officers chosen by that board. Therefore, Square One cannot be the general partner of Development. In any event, the Cafagnas do not persuade us the trial court erred by finding they did not carry their burden to show Counsel concurrently represents Development and Square One and/or them.

15

the Cafagnas) merely because of Square One's status as the general partner of those partnerships. To the extent the Cafagnas rely on *Wortham & Van Liew v. Superior Court* (1987) 188 Cal.App.3d 927 to support a contrary position, we conclude, as other courts have, that it is inapposite to an attorney disqualification case and does not persuade us that partnership attorneys necessarily also represent each of the individual partners for purposes of disqualification motions. (See, e.g., *Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 475-476, 477, fn. 4; *Responsible Citizens*, at pp. 1727-1728.)

However, an attorney-client relationship may nevertheless exist with an individual partner if certain factors show in a particular case that the partnership attorney has, in fact, also formed an attorney-client relationship with that partner. In *Johnson v. Superior Court*, *supra*, 38 Cal.App.4th at pages 476 to 477, we described the factors a court should consider in making such a determination: (1) the size of the partnership; (2) the nature and scope of the attorney's engagement; (3) the kind and extent of contacts between the attorneys and the individual partners; (4) the attorney's access to financial information relating to the individual partner's interests; and (5) whether the totality of the circumstances, including the parties' conduct, implies an agreement by the partnership attorney not to accept other representations adverse to the individual partner's personal interests. Primary attention should be given to the last factor. (*Id*. at p. 477; *Responsible Citizens v. Superior Court*, *supra*, 16 Cal.App.4th at p. 1733.)

Considering those factors in the circumstances of this case, we conclude the trial court did not err by impliedly concluding Counsel is not actually representing Square One in addition to representing the three limited partnerships and Development. The

16

three limited partnerships have few partners. The nature and scope of Counsel's representation of the partnerships appear to be for routine partnership matters, in contrast to matters relating to the individual interests of particular partners. There is substantial evidence to support the trial court's implied finding that Counsel has not been, and is not, performing services specifically for Square One's interests in contrast to the interests of the partnership generally. The kind and extent of contacts between Counsel and the individual partners, including Square One, do not show any representation other than that normally expected between a partnership's attorney and its partners regarding partnership matters. Likewise, although Counsel apparently has had access to certain financial information of Square One and/or the Cafagnas, the Cafagnas have not shown this financial information is other than that normally obtained by a partnership's attorney in the course of representing the partnership. In any event, the Cafagnas do not show Counsel *currently* has access to their financial information.

Finally, regarding the most important factor, the totality of the circumstances does *not* support an implied agreement by Counsel that it will not accept representations adverse to the Cafagnas' individual interests. On the contrary, the weight of the evidence appears to support the trial court's implied finding that Counsel did not agree to limit its representation of other partners or other clients to those without interests adverse to the Cafagnas. We are not persuaded by the Cafagnas' conclusory assertions to the contrary. The trial court did not err by finding Counsel do not concurrently represent the Cafagnas and Development. The court did not abuse its discretion by denying the Cafagnas' motion to disqualify Counsel.

17

DISPOSITION

The petition is denied.  Real party in interest shall recover its costs in the writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)  This opinion shall be final as to this court on May 27, 2014.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.